**In re MULTI–PHOTO, INC., Debtor.**

**MULTI–PHOTO, INC., Plaintiff,**

**v.**

**MARK TWAIN BANK OF ST. CHARLES COUNTY, N.A., Defendant.**

Bankruptcy No. 85–00874(2).

Motion No. 02.

Adv. No. 85–0244(2).

United States Bankruptcy Court, E.D. Missouri, E.D.

April 30, 1986.

Robert S. Flavin, St. Louis, Mo., for debtor.

David A. Warfield, St. Louis, Mo., for Mark Twain.

MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

INTRODUCTION

On May 15, 1985, the Court entered an Order for relief on the Debtor's voluntary Chapter 11 petition. At the time of its filing, Debtor was in possession of certain photographic equipment, inventory, and accounts receivable ("the collateral") in which Mark Twain St. Charles County Bank ("Mark Twain") claimed to have a valid and perfected security interest. On June 24, 1985, Mark Twain moved to terminate the

stay, or in the alternative, for an adequate protection order as to the collateral. On July 5, 1985, Debtor filed a response to Mark Twain's motion in which it prayed for its dismissal. Thereafter, on December 6, 1985, Debtor filed a complaint against Mark Twain in which it sought the Court's determination that Mark Twain did *not* have a valid lien on that part of the collateral consisting of the photographic equipment. On November 25, 1985, Mark Twain filed its Answer denying the Debtor's entitlement to relief.

Since the two matters involve common issues of fact and law, they were tried together on October 7, 1985. Upon consideration of the evidence, the arguments and briefs of counsel, and all other matters of record, the Court this day enters an Order denying Mark Twain's Motion For Relief From The Stay subject, however, to Debtor's complying with Bankruptcy Rule 2015 and tendering to Mark Twain an acceptable adequate protection proposal. The Court will also grant Debtor judgment against Mark Twain declaring that the bank does not have a valid lien on Debtor's photographic equipment.

JURISDICTION

This Court has jurisdiction over the parties and subject matter of these proceedings pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. These are "core proceedings" pursuant to 28 U.S.C. § 157(b)(2)(D), (G), (K), and (M), which the Court may hear and determine.

FACTS

Debtor is in the business of photo finishing and processing and has a place of business in only one Missouri county. At all relevant times, Donald R. Anderson ("Donald") was Debtor's President. Carol Anderson ("Carol") is Donald's former spouse. On July 9, 1981, Debtor guaranteed Mark Twain that it would pay Donald's present and future debts to it. On November 8, 1982, Debtor secured its obligations to Mark Twain by granting the bank a security interest in Debtor's accounts receivable,

inventory, and their proceeds. Mark Twain perfected its lien by filing financing statements with the appropriate local and state authorities. On its bankruptcy schedules filed May 15, 1985, Debtor valued the accounts receivable at $5,933.15 and the inventory at $9,526.00. At trial, Donald testified that the current value of the accounts receivable was probably $6,000.00 and the inventory $8,000.00—$10,000.00.

On July 1, 1983, Donald executed a promissory note payable to Mark Twain in the principal sum of $28,400.00. Payments were to be made in monthly installments of $668.25. While Donald made payments through April, 1984, except for his $3,000.00 payment in June, 1984 and a $1,600.00 setoff taken by Mark Twain against Debtor's checking account in fall, 1984, no further payments have been made on this note. As of May 15, 1985, Debtor's date of bankruptcy, the balance owed on the note was $25,533.06.

Also on July 1, 1983, as security for its obligations to Mark Twain, Debtor granted the bank a security interest in its photographic equipment consisting of one Pakopak No. 3 Module EP2 (0799) and two Lucht Lens Drawers (the "photographic equipment"). This equipment is currently worth no more than $4,000.00. Mark Twain attempted to perfect its security interest by filing financing statements with the appropriate local and state authorities. The financing statements are attached hereto as Appendices 1 and 2.

Debtor disputes the efficacy of these filings. In particular, Donald testified that the financing statement filed in St. Louis County was not signed by the Debtor. Inspection of the document, as well as a comparison of it with the financing statement filed with the Missouri Secretary of State, supports Donald on this point.

The document obviously has been altered. The debtor was originally identified as "Anderson, Donald and Carol". This was marked out and "Multi-Photo, Inc." inserted into the box reserved for the debtor's name. Donald testified that he never

signed such "sloppy documents", at least not without initialling such changes. The document in question does not contain his initials. Moreover, it is signed by both Donald and Carol without any indication of their corporate capacity. Contrast this with the financing statement filed with the Missouri Secretary of State, signed only by Donald, with reference to his corporate office. The inference is very strong that Donald and Carol signed the financing statement as individual debtors, only to have someone subsequently alter the document by inserting in their stead "Multi-Photo, Inc." as the named debtor. The Court, therefore, finds that Multi-Photo, Inc. did not sign the financing statement filed with St. Louis County.

Since the inception of this case, Debtor has made no payments to Mark Twain. It has not received Mark Twain's consent for the use of cash collateral and it has not filed operating reports with the Court with the exception of one filed September 30, 1985 covering the period June 1, 1985 through July 31, 1985.

DISCUSSION

*A. Debtor's Complaint*

■ As debtor-in-possession, Multi-Photo, Inc. is vested with the rights of a trustee in bankruptcy. 11 U.S.C. § 1107. An unperfected security interest is subordinate to the rights of a trustee in bankruptcy. Section 400.9–301 R.S.Mo.; 11 U.S.C. § 544. Thus, if Mark Twain failed to perfect its security interest in the photographic equipment, Debtor owns it free and clear of any interest of Mark Twain.

Debtor argues that, in fact, it owns the equipment free and clear of any interest of Mark Twain simply because the bank never properly perfected its security interest in the photographic equipment. Debtor's argument has merit.

In order to perfect a security interest in equipment, financing statements signed by the debtor must be filed in the appropriate offices. Where, as here, the debtor has a place of business in only one Missouri county, the proper places to file are with both the Missouri Secretary of State and the

office of the County Recorder of Deeds. Section 400.9–401(1)(c), R.S.Mo.

Although Mark Twain filed a signed financing statement covering the photographic equipment with the Missouri Secretary of State, the Court has found that the financing statement Mark Twain filed with St. Louis County was not signed by the Debtor. Thus, Mark Twain failed to perfect its security interest in the photographic equipment and Debtor owns it free and clear of any interest of Mark Twain. *See, generally, In re Karachi Cab Corp.*, 21 B.R. 822 (Bankr.S.D.N.Y.1982).

*B. Mark Twain's Motion To Modify Stay*

Section 362(d) of the Bankruptcy Code provides as follows:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

■ The Court is not yet convinced that Mark Twain qualifies for relief under subsection (2). While Mark Twain does not have a valid lien on Debtor's photographic equipment, it does have a valid lien on Debtor's accounts receivable, inventory, and their proceeds. Since the Debtor owed Mark Twain about $25,000.00 on the date of bankruptcy and the collateral was worth about $15,000.00 at that time, it is clear that Debtor has no equity in the collateral.

The inventory, accounts receivable, and their proceeds, however, are the life blood of the business. Effective reorganization would not be possible without them.

Even with them, the Court has little basis for optimism about effective reorganization in this case. With the exception of the June-July, 1985 operating report, Debtor has not complied with the reporting requirements of Bankruptcy Rule 2015. Though nearly a year has passed since the filing of its petition, Debtor has not submitted a plan of reorganization. While the pending of the instant litigation may have made the details of a plan more complex, the formulation of a plan during this period was by no means impossible. Moreover, it appears that Debtor may have used accounts receivable and inventory proceeds to finance operation of its business. In the period immediately after filing, such proceeds would constitute cash collateral which Debtor should not have used unless it had Mark Twain's consent or a court order, neither of which it had or has to this date. 11 U.S.C. § 362(c)(2). Debtor has made no postpetition payments to Mark Twain and the bank now has pending before this Court a motion to dismiss Debtor's bankruptcy case. In short, the Court is not sanguine about Debtor's chances for success under Chapter 11.

Nonetheless, the Court is not yet ready to conclude that effective reorganization is impossible. Debtor is hereby cautioned, however, that unless it speedily remedies the problems noted above, the Court will grant Mark Twain appropriate relief.

The Court now turns to the issue of adequate protection. Under 11 U.S.C. § 362(d)(1), relief from the stay should be granted where the creditor's interest in the collateral is not adequately protected. Alternatively, the court can approve an adequate protection order.

In this case, Mark Twain had an interest in Debtor's accounts receivable, inventory, and their proceeds at the filing date. Section 552 of the Bankruptcy Code provides that a prepetition security interest does not attach to property acquired by the estate postpetition unless that property is proceeds covered by the security agreement. Although Mark Twain's security agreement covered proceeds, the rapid turnover of inventory and accounts receivable in Debtor's business would likely render Mark Twain's lien valueless were not the Court to protect it. In his closing argument, Debtor's attorney suggested that because the accounts receivable and inventory have not changed markedly in value since the inception of the case, Mark Twain's interest in the collateral would be adequately protected merely by Debtor's keeping their value at a specified minimum and furnishing Mark Twain periodic reports stating their value. Given the problems generated by Section 552, however, this proposal does not in itself adequately protect Mark Twain. On the other hand, "where the collateral consists of inventory and accounts adequate protection may be as simple as the providing of necessary accounting information and replacement security ..." 2 *Collier on Bankruptcy,* ¶ 361.01[1] (L. King 15th Ed. 1985).

While the Debtor should infer from this opinion what the appropriate elements of adequate protection are, the Debtor, not the Court, must make an adequate protection proposal to Mark Twain. *In re San Clemente Estates,* 5 B.R. 605, 609 (Bankr. S.D.Cal.1980). Thereafter, the Court will decide whether it is acceptable.

Orders consistent with this opinion will be entered this date.